UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.　　　　　　　　　　　　　　　**MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　AND ORDER**
　　　　　　　　　　　　　　　　Crim. No. 16cr205 (MJD/BRT)

Terrance Deshun Seymour,

    Defendant.

_____

    Thomas Calhoun-Lopez, Assistant United States Attorney, Counsel for Plaintiff.

    Douglas Olson, Assistant Federal Defender, Counsel for Defendant.

_____

    This matter is before the Court on the Report and Recommendation of the Magistrate Judge dated January 10, 2017 in which she recommends the Court deny Defendant's motion to suppress evidence obtained as a result of search and seizure and Defendant's motion to suppress statements, admissions and answers.

    Pursuant to statute, the Court has conducted a <u>de novo</u> review of the record.  28 U.S.C. § 636(b)(1); Local Rule 72.2(b).  Based on that review, the Court finds that the initial search of the Defendant's residence was not a permissible

1

search under the community caretaker exception to the warrant requirement. Accordingly, the Court will not adopt the Report and Recommendation and will grant Defendant's motions to suppress evidence and statements.

**ANALYSIS**

One exception to the requirement that law enforcement obtain a warrant based on probable cause prior to searching a residence is "the need to assist persons who are seriously injured or threatened with such injury. 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency.'" Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) (quoting Mincey v. Arizona, 437 U.S. 385, 392 (1978)). "Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." Id.

The Eighth Circuit has repeatedly recognized that a "'community caretaker' classification may justify noninvestigatory searches and seizures in certain limited situations." United States v. Smith, 820 F.3d 356, 360 (8th Cir. 2016). "A police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists

requiring his or her attention." Id. (quoting United States v. Quezada, 448 F.3d 1005, 1007 (8th Cir. 2006)). "When police must make a split-second decision in the face of an emergency to either stand idly by, permitting a dangerous situation to continue uninterrupted, or act, addressing the potential danger to protect the public, we have reasoned that officers are expected to act." United States v. Harris, 747 F.3d 1013, 1018 (8th Cir. 2014).

While the reasonable belief standard applied in these situations is less exacting than probable cause, such belief must be based on specific and articulable facts that outweigh the defendant's interests in freedom from government intrusion. Id. An action may be deemed reasonable under the Fourth Amendment, regardless of the officer's subjective state of mind, if "the circumstances, viewed objectively, justify [the] action." Id. (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

Based on the evidence presented at the motions hearing, Minneapolis Officers Anderson and Moua were on routine patrol in the Fourth Precinct on February 5, 2015. At approximately 9:00 p.m., they received a call from dispatch concerning a 911 call. The information provided to the police was that a caller called 911 and said "there's two men that came inside the house with guns."

(Transcript at 9.)  The police were also given the address of the subject house. (Id.)  Based on the testimony of Officer Anderson, that is the only information they received from dispatch.[1]

Officer Anderson testified that they drove to the house in question, and parked a few houses away.  (T. at 11.)  The officers got out of their squad car and approached the house on foot.  (Id.)  When they first approached the house, the officers did not detect any signs of stress or yelling coming from inside the house. (Id.)  The officers then looked in the windows and saw no one or anything of concern.  (Id. at 12.)  The officers then knocked on the door, which was quickly answered by a male, later identified as Dominic Peace, who let the officers into the home.  (Id. at 12, 28.)  Upon entering, the police officers immediately detained Peace and searched him for weapons.  (Id. at 14.)  Peace did not have a weapon on him.  (Id. at 29.)  At this time, additional officers arrived at the scene.  (Id. at

---

[1] In the government's response to the defendant's objection to the Report and Recommendation, the government wrote that "The officers were informed that a woman had called 911 to report two men in her house with guns. (MT at 9.)"  There is **no** reference to a female caller anywhere in the transcript.  In addition, when the government's misstatement of the facts was highlighted in the Defendant's Reply Brief, the government took no action to correct the misstatement.  Making a false statement of fact to a tribunal and failing to correct a false statement of material fact violates Rule 3.3 of the Minnesota Rules of Professional Conduct. Accordingly, the Court recommends that the prosecutor's conduct in this case be investigated for a potential ethics violation by the Department of Justice Office of Professional Responsibility.

14.) Thereafter, the officers conducted a sweep of the house to make sure it was safe for the officers and to make sure that no one inside the house posed a threat. (Id. at 15.) The officers did not encounter any other individual in the home after completing the sweep. (Id.) One officer did observe a short barreled shotgun on a rack in a closet in one of the bedrooms. (Id. at 16.)

After the house was cleared, the officers observed that a white vehicle was driving back and forth in the alley behind the home. (Id. at 19.) Eventually, the car parked in the driveway. (Id.) The officers questioned the occupants of the car and learned that the female, identified as Bree Majeski, lived at the house. (Id.) Ms. Majeski told officers that Mr. Peace was a friend of Terrance. (Id. at 22.) In response to the officer's questions, Ms. Majeski indicated that Terrance also lived at the house, and that his bedroom was the one in which the shotgun was found in the closet. (Id. at 23.)

At about that time, the Defendant - Terrance Seymour - approached the home from the alley. (Id. at 22.) When they learned his identity, officers arrested the Defendant because of the discovery of the short barreled shotgun in his bedroom. (Id. at 24.) The Defendant was then taken to the Hennepin County Jail, where he was subjected to a search. (Id. at 40.) After a small amount of

marijuana was found in his front pocket, the deputy obtained permission to conduct a strip search. The deputy found two bags of a white powdery substance between the Defendant's buttocks. (Id. at 42.) The Defendant was later indicted on the charge of possession of an unregistered firearm in violation of 26 U.S.C. 5841 and 5871.

To determine whether the search was reasonable in this case, the Court must focus on those objective facts known to the officers before the search was conducted. In this case, the officers were notified of a 911 call in which the caller reported that two men entered a house with guns. Clearly, in and of itself, entering a home with guns is not illegal. Once they arrived at the house, the officers did not see or hear anything that would suggest someone was in danger. When the officers knocked on the door, the knock was immediately answered and the officers were let into the house. They searched the individual that opened the door, and found no weapon on him.

The fact that the officers did not hear or observe anything warranting entry into the home distinguishes this case from the cases cited that applied the community caretaker exception to the warrant requirement. For example, in Brigham, the officers observed juveniles drinking in the back yard, and after

entering the backyard, observed through a screen door and windows, that an altercation was taking place between adults and a juvenile. Based on those facts, the Court found it reasonable that the officers entered the home in order to stop the altercation. 547 U.S. at 406.

In <u>Smith</u>, the officers had reason to believe that a woman missing from a half-way house was inside the home of the defendant, the defendant was her ex-boyfriend and a no contact order was in place, that defendant was known to have weapons, and that the woman had told a resident of the halfway that she was going to the defendant's home to get some of her personal possessions. 820 F.3d at 361-62.

In <u>Harris</u>, the defendant was observed sleeping in a Greyhound bus station with a handgun slipping out of his pocket. The police retrieved the gun before waking the defendant. He was later arrested after it was determined he had an outstanding warrant for his arrest. The court found the seizure of the gun was permissible, based on the circumstances presented. 747 F.3d at 1017-18.

Finally, in <u>Quezada</u>, the officer had gone to an apartment to serve a child protection order to an individual. The officer knocked on the apartment door, and the door opened because the latch was not engaged. The officer noticed the

lights and a were on, so he called out several times "Deputy Sheriff, Sheriff's Department." When no one answered, the deputy called his dispatcher and reported the situation. The dispatcher then stopped radio traffic so that fellow police officers could hear if he needed assistance. The deputy then entered the apartment, and found the defendant sleeping on the floor, partway in a bedroom, and that he had a shotgun protruding from under his legs. The court found the officer had a reasonable basis to enter the apartment after he saw the lights and tv on, and that a reasonable officer would conclude that someone was inside the apartment but unable to answer the door. 448 F.3d at 1007.

Because the search of the Defendant's home was conducted without a warrant, and because no exception to the warrant requirement applies to the facts in this case, the Court will grant Defendant's motion to suppress evidence seized during the search of the home. The Court further finds that any evidence seized from the Defendant's person following his arrest for possession of an illegal shotgun shall also be suppressed as fruits of the officer's unlawful search of the home. See Murray v. United States, 487 U.S. 533, 536-37 (1988) (discussing exclusionary rule which prohibits the introduction of derivative evidence that is the product of the primary evidence or that is otherwise acquired as an indirect

result of the unlawful search).

IT IS HEREBY ORDERED that Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 19) is **GRANTED**; and Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 20) is **GRANTED**.

Date:  March 28, 2017              s/ Michael J. Davis
                                                         MICHAEL J. DAVIS
                                                         United States District Court